IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division



FILED

OCT 18 2011

CLERK, US DISTRICT COURT
NORFOLK, VA

ROYAL & SUN ALLIANCE INSURANCE )
PLC a/s/o DSV AIR & SEA GMBH )
)
      Plaintiff, )
)
      v. )
)
ALBACOR SHIPPING (USA), INC., )
W.O. GRUBB STEEL ERECTION INC., )
and W.O. GRUBB CRANE RENTAL, L.C. )
)
      Defendants. )
)

Civil Action No. _2: 11cv 561_

Jury Demand

## COMPLAINT

Plaintiff ROYAL & SUN ALLIANCE INSURANCE PLC (hereinafter "RSA"), as subrogee of DSV AIR & SEA GmbH, by counsel, states as follows for its Complaint against Defendants, ALBACOR SHIPPING (USA), INC., W.O. GRUBB STEEL ERECTION INC. and W.O. GRUBB CRANE RENTAL, L.C. and states as follows:

### Introduction

1. Plaintiff brings this action to recover damages from Defendants as a result of damages incurred to property. Defendants are jointly and severally liable to Plaintiff.

### Parties

2. Plaintiff, RSA is a foreign corporation with its principal place of business at St. Mark's Court Chart Way, Horsham, West Sussex, RH12 1XL, United Kingdom. RSA is an insurance company. It is subrogated to the rights and interests of its insured, DSV AIR & SEA GmbH, which has its principal place of business located at Schlachte 15-18, DE-28195 Bremen, Germany. DSV is a freight forwarder or third party logistics provider.

3. Defendant, ALBACOR SHIPPING (USA), INC. (hereinafter "ALBACOR") is a New Jersey corporation with its principal place of business at 180 Franklin Turnpike, Mahwah, New Jersey 07430.

4. Defendants, W.O. GRUBB STEEL ERECTION INC. and W.O. GRUBB CRANE RENTAL, L.C. (hereinafter collectively as "W.O. GRUBB"), are affiliated Virginia corporations with their principal place of business at 5120 Jefferson Davis Highway, Richmond, Virginia 23234.

## Jurisdiction and Venue

5. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because the matter in controversy well exceeds the sum of $75,000, exclusive of interest and costs, and is between a citizens of a foreign State and citizens of the United States.

6. This Court has personal jurisdiction over W.O. GRUBB because the corporations are organized under the laws of the Commonwealth of Virginia, transact business in this State and maintain their principal place of business in this State.

7. This Court has personal jurisdiction over ALBACOR because it transacts business in this State on a systematic and continuous basis and can reasonably be expected to be haled into court in this State.

8. Further, this Court has personal jurisdictrion over all Defendants since they committed tortious acts in this forum and/or breached contracts the performance of which was in this forum.

9. Venue in this Court is proper under 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to the claims occurred in this forum.

## Factual Background

10. DSV Air & Sea GmbH (hereinafter "DSV") had been retained as an ocean freight forwarder, by Hymmen GmbH (hereinafter "Hymmen"), to arrange for the transportation of a Hymmen Isopress Double Belt Press Line Tupe GKS 1604-50-Y, referred to as a 125 MT ISO Double Belt Press (hereinafter "the Press") via ocean carrier from Germany to Portsmouth, Virginia.

11. The Press arrived at the port and was discharged from the ocean vessel in good order and condition.

12. After discharge, the Press was to be lifted and loaded onto a truck for eventual transport to final destination.

13. DSV retained ALBACOR to lift, load and transport the Press at Portsmouth Virginia and transport same to Greenville, North Carolina.

14. Since the Press weighed in excess of 120,000 kilograms (264,554 pounds), cranes would be required to lift the Press onto the truck.

15. ALBACOR was fully aware of the nature, size and weight of the Press and the equipment and supervision required to lift and move same.

16. ALBACOR advised DSV that it would use two 170-ton cranes to lift the Press.

17. ALBACOR specifically advised DSV that the ocean transport should be delayed so that ALBACOR would be able to ensure that the appropriate equipment would be available to perform the required services. Based upon ALBACOR's assurances, DSV delayed the transport.

18. ALBACOR retained W.O. GRUBB to provide the necessary cranes to lift the Press.

19. Instead of the two 170-ton cranes, W.O. GRUBB used only one 170-ton crane and two lesser-capacity cranes.

20. During the lifting operation the Press became unbalanced and fell, incurring substantial damages.

21. Due to the unique nature of the Press, the damage could not be repaired in the United States. It was therefore necessary to transport the Press back to Germany at significant cost.

22. As a result of the damages, a lawsuit was filed against DSV in Germany.

23. Although DSV denied liability, under German law an ocean freight forwarder is held liable as a carrier for damage to cargo for which it makes transportation arrangements.

24. DSV filed claims against Defendants to satisfy the claims brought against DSV by Hymmen. These claims were denied.

25. Since Defendants could not be joined in the German litigation, DSV was forced to defend this action and incurred significant expenses thereby.

26. RSA defended DSV in the German litigation and, facing a potential strict liability and being denied recovery against Defendants, fully satisfied the claim brought by Hymmen, well in excess of $75,000.

27. In exchange, RSA received a full and unrestricted assignment of all rights with regard to the subject cargo, including any claims for damages and costs related thereto, which are well in excess of $75,000.

28. All conditions precedent have been satisfied or waived.

## COUNT I – NEGLIGENCE (W.O. GRUBB)

29. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 28 as if fully set forth here.

30. W.O. GRUBB owed a duty of care to Plaintiff to safely load the Press.

31. W.O. GRUBB breached this duty of care by failing to provide appropriate equipment for the lift, failing to provide sufficient supervision to ensure the safe operation of the cranes, and/or failing to supervise the lift operations.

32. As a result of the breaches of its duty, the Press suffered damages, thereby injuring Plaintiff.

## COUNT II – BREACH OF CONTRACT (ALBACOR)

33. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 28 as if fully set forth here.

34. DSV retained ALBACOR to lift and load the Press for transport to final destination.

35. ALBACOR failed to safely lift and load the Press or transport same to destination.

36. These failures constitute a breach of the parties' agreement.

37. As a result of this breach, Plaintiff incurred damages.

## COUNT III – NEGLIGENT RETENTION (ALBACOR)

38. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 28 as if fully set forth here.

39. DSV retained ALBACOR to lift and load the Press onto a truck for transport to destination.

40. ALBACOR retained W.O. GRUBB to perform the duties for which ALBACOR was retained.

41. ALBACOR was fully aware of the equipment necessary for the safe performance of its duties.

42. ALBACOR knew that W.O. GRUBB could not provide the equipment necessary for the safe performance of its duties, yet retained W.O. GRUBB anyway.

43. Further, ALBACOR failed to supervise the lift of the Press and/or failed to ensure that W.O. GRUBB provided the supervision necessary to safely lift and load the Press.

44. As a result of this failure, the Press fell during the lift and incurred extensive damages, thereby injuring Plaintiff.

## COUNT IV – NEGLIGENCE – VICARIOUS LIABILITY (ALBACOR)

45. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 28 as if fully set forth here.

46. ALBACOR owed to Plaintiff a non-delegable duty to safely lift and load the Press for transport.

47. ALBACOR retained W.O. GRUBB to lift and load the Press for transport.

48. ALBACOR monitored and directed, or assumed responsibility to monitor and direct, the activities of W.O. GRUBB to lift and load the Press.

49. As such, ALBACOR retained control over the actions of W.O. GRUBB with regard to the lift and load of the Press.

50. During the lifting and loading operations, W.O. GRUBB caused the Press to fall thereby causing damages.

51. Since ALBACOR owed a non-delegable duty to Plaintiff and retained control over W.O. GRUBB during the loading and lifting operations, ALBACOR is liable to Plaintiff for the resulting damages.

## COUNT V – EQUITABLE SUBROGATION

52. Plaintiff reaffirms and realleges the allegations in paragraphs 1 through 28 as if fully stated herein.

53. Defendants accepted the responsibility of lifting and loading the Press.

54. During the lifting and loading operations the press fell and was damaged as a result of the actions or inactions of Defendants.

55. Subsequent to the damages, a claim was filed against DSV.

56. Plaintiff subsequently paid this claim on behalf of its insured.

57. As a result of the actions or inactions of Defendants, Plaintiff was damaged to the extent of the claim it satisfied.

58. Defendants should not receive the windfall of being absolved from liability because Plaintiff has dutifully paid the claim brought against its insured.

59. Therefore, Plaintiff is entitled to receive from Defendants, by way of equitable subrogation, the amount paid to satisfy the claim, plus interest, costs and attorney's fees.

## COUNT VI – INDEMNITY

60. Plaintiff reaffirms and realleges the allegations in paragraphs 1 through 28 as if fully stated herein.

61. As a direct result of Defendants' actions or inactions, Plaintiff was sued in Germany for the damages incurred to the Press.

62. Plaintiff satisfied these damages and moreover incurred substantial attorney's fees and costs in defending the German litigation.

63. Plaintiff's liability with respect to the damages is secondary, passive, technical, vicarious or implied whereas the liability of Defendants is primary, active and direct.

64. Plaintiff is entitled to indemnification from Defendants for the satisfaction of the claim in

the German litigation, plus interest, costs and attorney's fees.

**Request for Relief**

Plaintiff requests that the Court:

A. Enter judgment its favor and against Defendants, jointly and severally, for the

damages incurred to the Press, all attorney's fees and costs of this action and incurred in the

German litigation; and

B. Grant such other legal or equitable relief as it deems proper.

**Jury Demand**

Plaintiff demands trial by jury for all issues so triable.

Respectfully submitted,

Dated: October 18, 2011

Kenneth S. Nankin (VSB No. 28963)
Nankin & Verma PLLC
4550 Montgomery Avenue, Suite 775N
Bethesda, Maryland 20814
(202) 463-4911
(202) 463-6177 fax
ksn@nankin.com

and

Andrew R. Spector
Robert M. Borak
HYMAN SPECTOR & MARS, LLP
150 West Flagler Street, Suite 2701
Miami, Florida 33130
Telephone 305-371-4244 / Facsimile 305-371-5930
Andrews@hsmattys.com
Robert@hsmattys.com
*Pro Hac Vice to be filed*

*Attorneys for Plaintiff*